FRANKLIN.
Jaunary,
1840.

STEPHEN HOUSE *v.* AUSTIN FULLER.

In 1795 the proprietors of the town E. voted, at a regular meeting, to give H., one of its proprietors, the privilege of *pitching* four hundred .acres as a compensation for building the two first mills in the town, under the second section of the act regulating proprietors meetings :—Held that a *pitch* made in 1839, not expressly purporting to have been made in pursuance of said vote, gave to H. no right in severalty to the land contained in his survey.

An original proprietor in a town may recover, in his own name, the seizin and possession of undivided land, against a person who is a stranger to all title.

EJECTMENT, for part of lots No. 20 and 28, in Enosburgh. Plea, not guilty.  Issue to the court.

The plaintiff gave in evidence the charter of the town of Enosburgh and showed the allotment of the town at an early day.  He also proved that in 1795 and 1796, he became the owner of eight of the original proprietor's rights in said town, and read in evidence a vote of the original proprietors, passed at a meeting duly warned and held in October, 1795, which vote is as follows ;—" Voted, to give Stephen House the " privilege of pitching four hundred acres of land, as the " law specifics, for building a saw mill and grist mill in said " town, which mills are to be completed at a time to be agreed " upon by said proprietors at their next meeting.  Said " House to give bonds for his performance of the business."

The plaintiff also gave in evidence a copy of the proprietors records, showing a survey of a pitch of two hundred and fifty eight acres of land, made by him and Amos Fassett, in 1797, commencing as follows :—

" Enosburgh, June 12, 1797.

"Stephen House and, Amos Fassett pitched and surveyed " the interval on Tylers's branch (so called) in said Enos- " burgh, agreeably to a vote of the proprietors, as a com- " pensation for building the two first mills in said Enos- " burgh." and the lands surveyed were particularly describ- ed, &c.

It was conceded that, as early as the year 1800, the plaintiff, in conjunction with Amos Fassett, since deceased, erect- ed and put in operation a saw mill and grist mill in said town, but not in the immediate vicinity of the land now sued for.

FRANKLIN
January,
1840.

House
v.
Fuller.

The plaintiff read in evidence a pitch of the land sued for, made by him in March, 1839, surveyed by Anson Hull, who, in his survey, after giving the courses and distances, proceeds as follows ; " containing about 120 acres,—38 acres on lot 'No. 28,—54 acres on lot No. 20, and 28 acres on lot No. 3, ' still leaving 37 acres on No. 28 not voted or set to any ' right ;—39½ acres on No. 20 not voted to any right, and, ' according to Judge Beeman's survey, there is 7½ acres over a ' whole lot on No. 3, after taking out the .before named 28 ' acres. Surveyed agreeably to what said House says Hon. ' Amos Fassett surveyed it in 1797, as the mill-pitch.'

It was proved that the last mentioned pitch adjoined the pitch made in 1797, and did not include any water privilege suitable for a mill, although a stream ran across it, sufficient to carry mills, and that mills had long been in operation on the former pitch upon the same stream.

It was conceded that the reputed quantity of land in each original lot in said town, was one hundred and thirteen acres, but it was proved that lots No. 20 and 28, were much larger and contained about one hundred and seventy acres each.

An act of the legislature, passed in 1810, appointing commissioners to complete the division of the lands in Enosburgh, was introduced as evidence, and also the record of the commissioners' proceedings, under that act, dated June 18, 1812, and a report made by said commissioners, from which it appeared, that, of lot No. 20, fifty six and one half acres were set to the right of Stephen Fay, jr., eight acres to the right of John Sherwood and four acres to the right of David Bull; and, of lot No. 28, fifty six and one half acres were set to the right of Sylvanus Griswold, eight and one half acres to the right of Jeremiah Halsey, fourteen and one half acres to the right of Sylvanus Filley, and twelve acres of lots No. 20 and 28 to the right of John McCoy. It also appeared, from said record, that the fifty six and one half acres, set to the right of Stephen Fay, jr., lies on the east end of lot No. 20, and the fifty six and one half acres, set to the right of Sylvanus Griswold, lies on the east end of lot No. 28, and that no other lands, of lots No. 20 and 28, were set to any proprietors' right by said commissioners.

The commissioners reported that they had made a division of all the lands in said Enosburgh among the proprietors, &c.

It appeared, however, that there was a large overplus or residue of lots No. 20 and 28, which was not divided by said commissioners and that this overplus or residue was the same land that the plaintiff sought to recover in this action.

It was admitted, that, to each of the rights owned by the plaintiff in said Enoshurgh, as much land had been alloted as had been set to other rights, being about three hundred and sixty acres to each right, and it appeared that none of the proprietors to whom portions of said lots No. 20 and 28, had been assigned by said commissioners, were those whose rights were owned by the plaintiff.

The defendant read in evidence a deed from Jehiel R. Barnum to the defendant, dated February 14, 1831, of about ninety six acres of land, including the land in question, and it appeared that the defendant was in possession at the time of the commencement of this suit.

The plaintiff contended, that he was entitled to recover either by virtue of his pitch, made in 1839, or upon his original title under the eight proprietors, whose rights he owned, treating the land sued for as still undivided among the proprietors. But the court rendered a judgment for the defendant and the plaintiff excepted.

*Smalley & Adams*, for plaintiff.

1. The plaintiff had a title to the premises in question by virtue of his pitch, made in 1839, under the vote of the proprietors of the 24th October, 1795.

At the county court, it was objected that the plaintiff did not build the mills on any of the land included in his pitch. Neither the statute (p. 671) nor the vote of the proprietors require that the mills should be built upon the land pitched. Whatever might be the effect of the plaintiff's pitch, as between him and another proprietor, or any one having the right of a proprietor, the defendant, being a total stranger to any proprietary interest in the town, has no right to question the validity of the plaintiff's pitch. *Britton* v. *Lawrence et al.* 1 D. Chip. R. 103. *Wells et al.* v. *Brewster*, Ib. 147.

2. If the lands in question were not severed by the plaiutiff's pitch, they are now undivided and the plaintiff, being a proprietor, has a right to take the defendant, who is a stranger, out of possession of the whole premises, though the plaintiff, as against his co-proprietors, is only entitled to an undivided part, without showing either a legal or practical division. *Coit* v. *Wells*, 2 Vt. R. 318. *Pomeroy* v. *Mills*, 3 Vt. R. 410, S. C. 279. *University* v. *Reynolds*, 3 Vt. R. 553.

*S. S. Brown & Smith & Aldis*, for defendant.

The plaintiff cannot recover by virtue of the mill-pitch, made under the vote of the proprietors in 1797, because,

I. It does not appear that the conditions, specified in that vote, were agreed upon at a subsequent meeting.

2. The plaintiff never gave a bond as contemplated by said vote.

3. The plaintiff never built mills in said Enosburgh, agreeably to said vote. The building of mills by the plaintiff and Fassett was not a compliance with the vote of the proprietors. The survey of the mill-pitch, by House & Fassett, in 1797, shows, that the pitch, made by them, was in satisfacfor building the first mills, and the plaintiff is not at liberty to controvert the fact. Their claim being satisfied, the plaintiff could not carve out a second tract of land, under the vote of 1795.

4. It must be presumed, from the facts in the case, that the vote of the proprietors was abandoned by all parties.

5. The title which the plaintiff attempts to establish, under the vote of the proprietors, is barred by the lapse of time.

II. The plaintiff cannot recover as an original proprietor, treating the land as undivided.

1. The fact that the lots in question contain more than one hundred and thirteen acres each, does not entitle the plaintiff to recover the surplus. If he were permitted to do so, he, or any other proprietor, might recover the surplus of any lot in the town, however small that surplus might be. The mistakes committed in the original survey cannot now be corrected.

2. Lots No. twenty and twenty eight, were divided by the commissioners appointed by the legislature to complete the division of the lands in Enosburgh. Their report shows that

they divided all the lands in the town. The report is a matter of record and must be binding upon the proprietors.

The opinion of the court was delivered by

Bennett, J.—The first question presented for our consideration, is, whether the plaintiff is entitled to recover the lands in dispute, by virtue of the *pitch* made in March, 1839.

It seems, from the case, that the plaintiff has the title to the rights of eight of the original proprietors of the town, and he claims that the *pitch* made by him, in 1839, was a severance of so much of the undivided land in the town, and vested the title to it, in severalty, in himself. Is this so ? . At a meeting of the proprietors of the town, held in October, 1795, it was voted to give the plaintiff the privilege of *pitching four hundred acres*, for building a saw-mill and grist-mill in the town, and it was specified in the vote that the time in which the mills should be completed should be a-greed upon, by the proprietors, at their next meeting, and that the plaintiff should give bonds for his faithful performance of the business. The *pitch* made by the plaintiff and Amos Fassett, in June, 1797, on the two hundred and fifty eight acres, purports to be under the vote of 1795, and as a compensation for building the two first mills in the town. The proprietors, it seems, had no further action on the subject after their first meeting, and no bonds were ever given by the plaintiff. The business rested here until 1839, when the plaintiff made his survey of one hundred and twenty acres, covering the land in question. This pitch does not purport to have been made in pursuance of the vote of the proprietors of 1795, or any other vote, as a compensation for the building of the two first mills in the town, and, indeed, it would have been difficult for the plaintiff to have claimed any benefit from a vote of the proprietors, authorizing a pitch to have been made, after so great a lapse of time, if he had attempted it.

The facts stated in the survey bill of 1839, under the hand of surveyor, " that it was surveyed agreeably to what House says Amos Fassett surveyed it in 1797, as the mill pitch," can have no possible effect. Neither is it any evidence in the case.

The plaintiff, most clearly, has not a title in severalty to the lands in question.

The next question for our consideration is, can the plaintiff recover, on the ground that the lands in question are undivided lands? The commissioners, appointed under the special act of 1810 to make division of the lands in this town, make report, it is true, that they have completed a division of all the lands in the town, except the lands in *Knight's gore*, and a small quantity of land in the east part of the town, but, when we have recourse to the division of the lots No. 20 and 28, as made by them, we find what lands, in fact, they have divided from these two lots. The lots in the town are understood to contain but one hundred and thirteen acres, though lots No. 20 and 28 contain, in fact, one hundred and seventy acres each. Of lot No. 20. the commissioners set to the original right of Stephen Fay jun. 56½ acres, the east part of it, eight acres to the right of John Sherwood and four acres to the right of David Bull, making 68½ acres. And of lot No. 28 the commissioners set fifty six and one half acres, *the east half*, as they say, to the right of S. Griswold, and twenty three acres to the rights of two other proprietors, making seventy nine and one half acres, and twelve acres from the two lots are also set to another right.

It is then evident that the commissioners, even upon their own ground, assuming that each of these lots contained only one hundred and thirteen acres, according to their reputed quantity, did not intend to divide the whole of them, for some cause or other. The closing part of their return, " that they had divided *all the lands*" &c., cannot conclude the plaintiff, especially as their whole record shows some part of these two lots, at least, undivided.

The bill of exceptions in this case, in fact, finds, that after taking out those portions of lots No. 20 and 28 which the commissioners had set off or assigned to particular proprietors, there was an *overplus* of land, and that this is the land in question.

This then must be undivided land, and, as the defendant stands a stranger to all title, the plaintiff may well recover against him by virtue of his proprietary rights.

The judgment of the county court is reversed.